# CHARLES STREET AVENUE COMPANY *vs.* JOSEPH MERRYMAN and OTHERS.

An act of Assembly reciting that *additional highways,* leading to the city of Baltimore, "are much required for *public convenience,* and that an avenue leading from the present termination of Charles street, would greatly promote *that convenience,*" incorporated a company to make such a road. By this act it is provided that the road shall commence at the present northern termination of Charles street, "and shall run thence in a *direct line* with said street extended, in a direction *about due north,* until it reaches the northern outline" of a farm called "*Clover Hill,*" thence in a prescribed line to the other terminus. Power is then given the company to *condemn lands* to construct the road, and by the *twelfth* section it is enacted, that it shall not be lawful "*to lay out or extend the said road through the buildings, yards or orchards, of any farm, without the consent of the owner.*" HELD:

That this act was passed for the *public convenience and benefit,* and the *prohibitory restrictions* contained in the *twelfth* section must be construed as requiring and authorising a *deviation* or change in the location of the road at such points, from the prescribed route, and not as a *cesser of the corporate franchise* in case the consent of the owners cannot be obtained.

The mode of obtaining such charters from Parliament is different from the legislative practice in this State; this charter must be construed as found on the statute book, and operation and effect given to it according to the intention of the Legislature to be gathered from its provisions.

APPEAL from the Equity Side of the Circuit Court for Baltimore county.

Charles Street Avenue Co. *vs.* Merryman.

This appeal was taken from an order of the court below, (PRICE, J.,) granting an injunction, upon a bill filed by the appellees, to restrain the appellant from making a road upon the land of the complainants.

The act of 1854, ch. 204, incorporating the Charles street Avenue Company, recites, in its preamble, that "It has been represented to this General Assembly, by many of the inhabitants of the ninth election district of Baltimore county, and others, that *additional highways* leading to the city are much required for the *public convenience* in that part of the county, and that an avenue leading from the present termination of Charles street would greatly promote *that convenience.*" The *first* section then enacts: "that a company be incorporated to make a Turnpike road from the present Northern terminus of Charles street, in or near the city of Baltimore, to a point on the road, known as the Powder Mill road, in Baltimore, near the powder magazine." The subsequent sections provide for subscriptions to the stock, the organization, name and management of the company, and the *ninth* section invests the company so organized "with all the powers and authority necessary for the construction of a turnpike, between the termini, mentioned in the first section of this act," prescribes the width of the road, and of what materials and in what manner it shall be constructed, and then, *"in order that the route or intended course of said road may be known to all concerned, with as much precision as possible,"* this section further enacts: "That said road shall commence, as aforesaid, at the present termination of Charles street, and shall run thence *in a direct line with said street extended in a direction about due north,* until it reaches or approximates the northern outline of a farm in said county, known as *Clover Hill,* the property of Joseph Merryman and others, thence diverging to the west or northwest," and following a route, which is particularly defined, to the other terminus. The *tenth* section gives the company power to purchase and *condemn lands* and materials for the use and construction of the road. The *twelfth* then enacts: "that nothing in this act shall be construed to authorise or empower the location of the said Turnpike road through or over the

grounds occupied by the Maryland State Agricultural Society, without their consent, or until they shall have abandoned the use of said grounds as a place for the holding of their annual show or fair, *nor shall it be lawful to lay out or extend the said road through the buildings, yards, or orchards of any person or persons, without the consent of the owner or owners thereof.*"

The bill alleges that the complainants are owners in fee of *Clover Hill* farm, mentioned in the ninth section of this act, and believing it would be·for their advantage, as such owners, to have Charles street extended in a *straight line* so as to cross their land, and desiring to advance their interests in that behalf as well as the public convenience, they gave their support and furtherance to a plan projected for such extension, which found such favor with the General Assembly that the above mentioned law was passed; *that* by reason of the inducements afforded by the *route prescribed in this act,* they, and others, subscribed to the capital stock of the company, which was duly organised, and proceeded for a time to carry out the directions of its charter, but afterwards, in continuing to lay out and construct the road between the end of Charles street and the southern edge of *Clover Hill,* instead of pursuing, as it ought, a *straight course* about due north, the road was made, at a place on the land of one Wyman, to *deviate* for the space of 1850 feet and pursue a circuitous and longer route, which at some points is distant full 300 feet from the proper *straight line; that* complainants opposed the purpose so to deviate when it was first formed, and have continued to resist and protest against it, but the company, nevertheless, has established this *deviation* as the *permanent route* for, and have *constructed* the road thereon, and have now no purpose to relinquish it, and pursue the direct north course prescribed by the charter, and in making this deviation the company has plainly violated its charter; *that* this deviation operates to the great injury of the complainants, for had the road pursued, as it ought, a straight course from the end of Charles street across their farm, its value would have been greatly enhanced thereby, and building lots thereon brought a higher price than they can if the road per-

sues the circuitous course as now laid out, and had the road been continuously straight the property of the complainants on the line thereof would have commanded an unobstructed view to the city of Baltimore, of which advantage it is deprived by this deviation; *that* complainants never would and never did consent to any plan by which this road should be made through their land in any other than a straight line with Charles street, and it was because they saw the charter had prescribed such a course, and relying upon a faithful adherence thereto by the company, that they came to its support; *that* notwithstanding the cesser and suspension of its powers caused by this deviation, the company is proceeding to make the road across complainants' farm, and has commenced to pull down the fences and make excavations of the soil, for that purpose, though expressly forbidden and prohibited by them from entering or trespassing thereon, all of which actings, doings, and proceedings, are contrary to equity, and tend to the irreparable injury of their farm and of the complainants. The bill then prays for the injunction, which was granted, and from the order granting it, the defendant, after answer filed, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*J. Malcolm* and *Charles H. Pitts* for the appellant, argued:

1st. That the company had not violated its charter. By the terms of the 12th section, it was expressly forbidden to construct a road through the yards and orchards of any person on the route without the owner's *consent*, and, therefore, was authorised by necessary implication to *deviate* from the direct north line, whenever such line should intersect any thing laid down in the restrictions of the charter. The bill does not allege, that the company obtained the consent of Wyman, upon whose lands the deviation was made, or that it had the power to pass straight through his property, and there is, therefore, a failure to allege that the deviation was made *by default* of the company. The bill should have *excluded* every restriction contained in the charter. The *English Railway Cases* are not

applicable to *this charter;* for the *mode* of obtaining such charters in England, is *entirely different* from our legislation in such matters, and most of the English charters contain words of *express prohibition.* In construing this charter, every part of it must be considered, in order to effectuate the intent which the Legislature manifestly had in view by its passage. Its preamble declares, that *public convenience* required *additional highways* leading to the city of Baltimore. Its object, therefore, was to make an ordinary country highway for *public convenience,* not to bring the property of the appellees within the city limits that they might sell it for city lots at fancy prices. Nor did the Legislature intend the road should pursue an *undeviating straight line.* There were no lines or maps before the Legislature as in the English cases, and the 9th section of this law is a mere *indication* of the route of the road, and contains not a word which says there shall be *no deviation.* In order that those concerned may know, *as nearly as possible,* the intended route, its *general direction* is defined to be *about due north.* The design was to open up to that region of country a convenient avenue to the city, and thus remedy the evil complained of. The road was prohibited from passing through buildings, yards or orchards, without consent of the owners, but it was never intended it should *stop* unless such consent could be obtained, and such restrictions clearly show, that the Legislature could not have contemplated it should be built in an undeviating straight line. In making this deviation, therefore, there was no cesser of corporate powers. Nor is there any equity in the complainants' case: they stood by, saw the work going on, the deviation *permanently made,* and permitted the road to be built *up to their farm,* and then, after thus obtaining all the benefit of the work, say to the company, you shall stop here, and our neighbors north of us, who united with us in the application for the charter, shall not be benefitted thereby. They are guilty of laches, 1 *Swanst.,* 244, *Mayor &c. of King's Lynn, vs. Pemberton.*

2nd. That even if there was a deviation not allowed by the charter, there is no such irreparable damage done to the complainants, *and stated upon the face of the bill,* as would au-

thorise a court of equity to grant an injunction. 1 *Md. Rep.*, 545, *White vs. Flannigain.* 3 *Do.*, 489, *Chesapeake & Ohio Canal Co.*, vs. *Young.*

*Richard J. Gittings* and *A. W. Machen* for the appellees, argued:

1st. That by *deviating*, in one part, from the line prescribed by the charter, the company deprive themselves of the right to pursue the statutory line over the land of other owners, who are injuriously affected by such deviation. The 9th section of this charter *defines* the line of every foot of the road. A straight course must be pursued until it passes through *"Clover Hill."* If it had been intended that the road should have been made by any other than a *direct* line to this point, the Legislature would have so *provided.* The 12th section restricts the road from passing through the grounds of the Agricultural Society, and through buildings, yards and orchards, without the consent of the owners, and if these obstructions are met with, and the required consent cannot be obtained, the road must stop. A corporation can only exercise the powers which are *expressly granted* to it, and no power having been given to make a deviation, none can be made. 1 *Mylne & Keen*, 162, *Blakemore vs. Glamorganshire Canal Navigation Co.* 6 *Mees. & Wels.*, 340, *Payne vs. Bristol Railway Co.* 2 *Do.*, 824, *Lee vs. Milner.* 1 *Swanst.*, 250, *Mayor of Kingston*, vs. *Pemberton.* 9 *Beav.*, 391, *Gray vs. Liverpool & Bury Railway Co.* 12 *Do.*, 134, *Cohen vs. Wilkinson.* 3 *Barn. & Adol.*, 108, *King vs. Cumberworth.* 1 *Nev. & Perry*, 197, *King vs. Cumberworth.* 2 *Perry & Davidson*, 648, *Queen vs. Eastern Counties Railway Co.* 6 *Nev. & Man.*, 91, *King vs. Edge Lane.* 11 *Pet.*, 545, *Charles River Bridge*, vs. *Warren Bridge.* 9 *How.*, 186, *Perrine vs. Chesapeake & Delaware Canal Co.* 21 *Penn. State Rep.*, 22, *Penn. Railroad Co.*, vs. *Canal Commissioners.* 8 *Richardson*, 177, *Rail Road Co.*, vs. *Payne. Dwarris on Statutes*, 661.

2nd. That a permanent deviation having been made, the complainants were entitled to an injunction to restrain the company from proceeding upon their land. 2 *Eden on Injunction*,

371, 374, *note,* and cases above cited. This deviation makes the road a *different* road from that laid down in the charter, and the complainants, as *land-owners,* have the right to say to the company, you cannot use our land for a *different* purpose from that contemplated by your charter. According to the English authorities before cited, this is not a case of mere trespass but of *contract,* the breach of which may well be enjoined. It is a distinct ground of equity jurisdiction, to restrain incorporated companies from an abuse of their powers to the injury of individuals. 2 *Story's Eq., sec.* 927. 7 *Md. Rep.,* 511, *Steuart vs. Mayor & C. C. of Balto.* 1 *Eng. Railway Cases,* 153, *Dun River Nav. Co., vs. North Midland Counties Railway Co.* 31 *Eng. Law & Eq. Rep.,* 252, *Pinchin vs. London & Blackwall Railway Co.* But even if the injunction rested solely upon the ground of irreparable mischief, such mischief abundantly appears by the bill: the farm of the complainants is threatened with alteration *as such,* (1 *Md. Rep.,* 545, *White vs. Flannigain,*) and secondly, a permanent easement is about being unlawfully established upon it.

Tuck, J., delivered the opinion of this court.

The act of 1854, ch. 204, under which the Charles Street Avenue was commenced, was passed for the public convenience and benefit, by affording an additional highway between Baltimore city and the county, the termini and route of the road being indicated in the act. It does not appear that the owners of property on the line of the road were parties to this legislation, and assented to the act, even conceding that that would have furnished an equity against its further construction in the direction proposed. It is a law passed in the exercise of legislative authority clearly possessed by the State, by virtue of which the company were authorized to condemn and appropriate private property for the uses of their charter. The appellees may have had private views in giving their support in furtherance of the plan for this improvement, but if these are likely to be frustrated by the conduct of the company, as now complained of, there is nothing in the act to show, that

the plan was to fail altogether on that account. We may therefore lay out of view all that is averred in the bill, as to what the appellees expected to have enjoyed by opening this avenue.

We need not review the English canal and rail road cases referred to in the argument, because the mode of obtaining such grants of power from Parliament, is different from the legislative practice in this State, and the cases differ in other respects. We must take this charter as we find it on the statute book, and give it operation and effect according to the intention of the Legislature, to be gathered from its provisions.

It may be conceded that, apart from the twelfth section, the company would have been confined to a direct line to "Clover Hill." But, then, it might have passed through buildings, yards, and orchards, without the assent of their owners, by force of the authority conferred by the tenth section, to condemn property for the location and construction of the road. This being so, the case must depend upon the effect to be given to the twelfth section, and the construction to be placed upon the whole act. In this aspect, one of two conclusions must be arrived at; either that the company must be permitted to diverge from the route indicated, as far as may be necessary to comply with the terms of that section, or the improvement must cease altogether, if such obstacles are presented, and the owners will not agree to have their buildings, yards, and orchards, appropriated for the purposes of the law; and the question for our decision is, which of these two results did the Legislature intend?

It was said, in argument, that if the Legislature had intended an avenue should be made by any other than a direct line to "Clover Hill," the law would have so provided. We think that no satisfactory conclusion can be deduced from the want of express words conferring such a power, because it may as reasonably be said, that if the avenue was to have been opened to that point, by a direct line and no other, and the Legislature had designed that the public convenience should be promoted by having an additional highway, only in the event of its be-

ing straight as far as "Clover Hill," appropriate language would have been employed to give that effect to the twelfth section. But this was not done. The act clothes the company with ample powers to make a public improvement, imposing terms of restriction, as to the condemnation of particular kinds of property, and we are asked to say that these, by necessary implication, were designed to defeat the purposes of the grant, if the contingency mentioned in that section should arise.. We think the whole act must be considered in connection with what was the expressed purpose of the State in conferring those powers upon the company. And, seeing that the public benefit was in the contemplation of the Legislature, and that the act does not destroy or take away the authority of the company, upon the state of things referred to in the 12th section, the prohibitory words employed should be construed as merely requiring a change in the location of the road at such points, and not as a cesser of the corporate franchise.

Being of opinion that the injunction was improvidently issued, the order appealed from will be reversed.

*Order reversed.*